IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

MARIAN L. WIMSATT,

      Plaintiff,

vs.                                                                                       No. CIV 08-00269 RB/RHS

BURLINGTON RESOURCES, INC.,
CELLO ACQUISITION CORPORATION, INC.,
CONOCOPHILLIPS COMPANY, and
WACHOVIA BANK, N.A., as Trustee of Burlington
Resources, Inc., Restated Benefits Protection Trust,

      Defendants.

### MEMORANDUM OPINION AND ORDER

**THIS MATTER** came before the Court on motion by Defendants Burlington Resources, Inc. (hereinafter "BRI"), Cello Acquisition Corporation, Inc. (hereinafter "Cello"), and ConocoPhillips Company (hereinafter "COP") to dismiss in part, pursuant to Rule 12(b)(6). Defendant Wachovia Bank, N.A. (hereinafter "Wachovia") joins in Defendants BRI, Cello, and COP's motion to dismiss in part, pursuant to Rule 12(b)(6). Jurisdiction is founded upon 28 U.S.C. § 1332. Having considered the submissions of the parties, relevant law, and being otherwise fully advised, Defendants BRI, Cello, and COP's motion to dismiss in part, pursuant to Rule 12(b)(6), joined by Defendant Wachovia, is **GRANTED**.

**I.     Background.**

On January 1, 1990, Defendant BRI initiated the Restated Benefits Protection Trust Agreement (hereinafter "BPTA"), creating the BRI Benefits Protection Trust (hereinafter "BPT") and designating a Trustee, which by succession became Defendant Wachovia, to secure and administer various employee benefit programs (Doc. 13-2, 13-3, 13-4). On December 6, 2000, BRI adopted the Amended and Restated Burlington Resources, Inc. Employee Change in

Control Severance Plan (hereinafter "ECIC"), which was revised on April 21, 2004. The ECIC was created to provide severance benefits to BRI employees in the event of a change in control of BRI (Doc. 13-2). Plaintiff Marian L. Wimsatt is a beneficiary of the ECIC. The BPTA was amended on March 1, 2006 to require that $75,000,000 be delivered to the BPT for purposes of providing severance benefits to employee beneficiaries (Doc. 13-4). After a change of control, the BPTA mandates that the Trustee, Wachovia, is to have exclusive authority to manage and control the BPT assets, subject to any specific requirements in the plans (Doc. 13-3).

On March 31, 2006, BRI merged into Defendant Cello, which is a foreign corporation and a wholly owned subsidiary of Defendant COP. COP is a Delaware corporation engaged in business in New Mexico. Subsequent to the merger, Cello changed its name to Burlington Resources, and continues doing business in New Mexico under that name.

Plaintiff's employment with BRI continued through the merger with Cello. Following the merger of BRI with Cello, Plaintiff alleges that she was effectively "squeezed out" of her position. She claims her job duties were substantially changed and that she suffered a significant reduction in job responsibilities during the period following the merger. Plaintiff further alleges that the company refused to pay her a large bonus following her critical role in the acquisition of a $50,000,000 property. Plaintiff alleges that this treatment on the part of her employer conformed with the definition of "good reason" to consider herself terminated pursuant to the ECIC.

Plaintiff gave her former employer notice of her claim for severance benefits, pursuant to the ECIC, on September 21, 2007, November 18, 2007, December 3 and 5, 2007. Her employment ended on September 30, 2007. At the time her employment ended, she was the Senior Staff Land Analyst in the Farmington, New Mexico office for BRI and had been

employed by the Company for over 17 years. On January 7, 2008, Wachovia, as Trustee of the BPT, mailed the Plaintiff written notice that her claim for severance benefits had been denied. Plaintiff alleges that, pursuant to the terms of the ECIC, the Plaintiff has no further appeal rights with respect to this decision.

Plaintiff filed this suit with this Court, based on diversity jurisdiction, on March 13, 2008, alleging–in relation to the denied severance benefits–Count I, breach of contract, and Count II, breach of fiduciary duties, and–in relation to a promised bonus–Count III, promissory estoppel. Defendants BRI, Cello, and COP responded by requesting that the Court dismiss Counts I and II of Plaintiff's Complaint, together with her claims of extra-contractual damages, pursuant to Rule 12(b)(6), based on a failure to state a claim upon which relief can be granted. More specifically, Defendants BRI, Cello, and COP argue that Counts I and II of Plaintiff's Complaint are preempted by the Employee Retirement Income Security Act of 1974 (hereinafter "ERISA"). Defendant Wachovia joins in Defendants BRI, Cello, and COP's motion to dismiss in part, pursuant to Rule 12(b)(6).

Defendants BRI, Cello, and COP appended a copy of the ECIC, BPTA, including amendments, Plaintiff's Notice of Termination, and a Form 5500 to their 12(b)(6) motion. Plaintiff requested that the Form 5500 be removed from consideration by the Court because it is outside the scope of the pleadings and is hearsay.

**II.     Rule 12(b)(6) Motion to Dismiss Standard.**

A claim for relief may be dismissed for failure to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). This Court, for purposes of analyzing a motion to dismiss, pursuant to Rule 12(b)(6), must accept all of the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the Plaintiff. *David v. City & County*

*of Denver*, 101 F.3d 1344, 1352 (10th Cir. 1996).  The Court must also look for plausibility in the complaint; in other words, the complaint must include factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1965 (2007).

On a Rule 12(b)(6) motion, if "matters outside the pleading are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." "[I]n general, a motion to dismiss should be converted to a summary judgment motion if a party submits, and the district court considers, materials outside the pleadings." *Prager v. LaFaver*, 180 F.3d 1185, 1188 (10th Cir. 1999).  However, notwithstanding the usual rule that a court should consider no evidence beyond the pleadings on a Rule 12(b)(6) motion to dismiss, "the district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002). "The failure to convert a 12(b)(6) motion to one for summary judgment where a court does not exclude outside materials is reversible error *unless the dismissal can be justified without considering the outside materials*." *GFF Corp. v. Associated Wholesale Grocers*, 130 F.3d 1381, 1384 (10th Cir. 1997)(emphasis added).

**III.   Discussion.**

The Court finds that the Form 5500 submitted by Defendants BRI, Cello, and COP is outside the scope of the pleadings.  The Court, therefore, excludes the Form 5500 from consideration in this 12(b)(6) motion. *See* Fed.R.Civ.P. 12(d).  Because the Form 5500 is excluded from consideration, it is unnecessary to convert this Rule 12(b)(6) motion into a motion

for summary judgment. *See GFF Corp.*, 130 F.3d at 1384.

Plaintiff has not disputed the authenticity of the copy of the ECIC, BPTA, including amendments, and Plaintiff's Notice of Termination, which were appended to the Rule 12(b)(6) motion. Each of these documents was referred to in the complaint and is central to the Plaintiff's claim. *See Jacobsen*, 287 F.3d at 941. The Court, therefore, deems it appropriate to consider the contents of the ECIC, BPTA, including amendments, and Plaintiff's Notice of Termination.

ERISA governs employee benefit plans. 29 U.S.C. § 1003(a). One form of employee benefit plan is an employee welfare benefit plan. 29 U.S.C. § 1002(3). The definition of an employee welfare benefit plan can be broken down into five elements: (1) a plan, fund, or program, (2) established or maintained, (3) by an employer, (4) for the purpose of providing benefits, (5) to participants or their beneficiaries. *Peckham v. Gem State Mutual of Utah*, 964 F.2d 1043, 1047 (10th Cir. 1992); *Donovan v. Dillingham*, 688 F.2d 1367, 1371 (11th Cir. 1982). Employee welfare benefit plans can include plans to pay severance benefits. *See Fort Halifax Packing Company, Inc. V. Coyne*, 482 U.S. 1, 7 (1987). ERISA preempts all claims arising under state law insofar as they relate to an employee benefit plan. 29 U.S.C. § 1144(a).

The ECIC constitutes an employee welfare benefits plan, under ERISA. Indeed, the ECIC–the Employee Change in Control Severance *Plan–was established on December 6, 2000* by BRI, *Plaintiff's former employer*, to *provide severance benefits* to *employee beneficiaries* in the event of a change in control of BRI (Doc. 13-2). *See Peckham*, 964 F.2d at 1047. Pursuant to the BPTA, the ECIC is administered by a Trustee, Wachovia (Doc. 13-4).

"A 'plan, fund, or program' under ERISA is established if 'from the surrounding circumstances a reasonable person can ascertain the intended benefits, a class of beneficiaries, the source of financing, and the procedures for receiving benefits.'" *Peckham*, 964 F.2d at 1047

5

(quoting *Dovovan,* 688 F.2d at 1373). A reasonable person can ascertain from the ECIC that the intended benefits are the payment of severance benefits in the event of a change in control at BRI (Doc. 13-2). The class of beneficiaries is "all regular, full-time, active employees of the Company and its wholly-owned subsidiaries" (Doc. 13-2). The source of financing is $75,000,000 paid into the BPT (Doc. 13-4). The BPT was created "for the purpose of assuring that [benefit] payments will not be improperly withheld" (Doc 13-3). The Trustee, Wachovia, manages assets to be paid out under several employee benefits plan listed in the BPTA (Doc. 13-3). The procedures for receiving benefit payments are outlined in the ECIC and some of these procedures are reiterated in the Notice of Termination form (Doc. 13-2, 13-6).

BRI established and maintained the ECIC, as required by ERISA. The requirement of establishing or maintaining an employee welfare benefits plan "seeks to ascertain whether the plan is part of an employment relationship by looking at the degree of participation by the employer in the establishment or maintenance of the plan." *Peckham*, 964 F.2d at 1049 (citing Hansen v. Cont'l Ins. Co., 940 F.2d 971, 978 (5th Cir. 1991) (requiring some meaningful degree of participation by the employer in the establishment or maintenance of the plan). In this case, BRI instituted the ECIC as an addition to an array of employee welfare benefits plans and limited a successor's ability to amend or terminate the benefits it provided (Doc. 13-2). BRI had previously established the BPT, under the BPTA, for the purpose of assuring that, should a change in control occur, benefits would be paid to qualified participants (Doc. 13-3, 13-4). BRI took steps to insure that the BPT had adequate assets to pay claims under the ECIC (Doc. 13-4). The BPTA delegated the handling of claims, including discretion in approving and denying claims to the Trustee, Wachovia (Doc. 13-4).

Pursuant to ERISA, BRI established and maintained the ECIC and BPT as an employer,

acting directly in the interest of Plaintiff as an employee. *See* 29 U.S.C. § 1002(5); *see also* *Peckham*, 964 F.2d at 1047.

The severance benefits provided under the ECIC constitute benefits under ERISA. Department of Labor regulation 29 C.F.R. § 2510.3-1(a)(3)(1991) has interpreted 29 U.S.C. § 1002(1) to include severance pay plans. *See* 29 U.S.C. § 1002(1)(B) (granting the Secretary of Labor to issue regulations treating severance pay arrangements as an employee welfare benefit plan). The Supreme Court also has expressly noted in *Fort Halifax Packing Company, Inc.* that employee welfare benefit plans can include plans to pay severance benefits. 482 U.S. at 7.

The benefits provided under the ECIC are provided to both participants and beneficiaries under ERISA. *See* 29 U.S.C. § 1002(7) (defining "participant" as "any employee or former employee of an employer ... who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer); 29 U.S.C. § 1002(8) (defining "beneficiary" as "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder"). Indeed, the ECIC specifically mandates that "[e]ach Employee shall automatically be entitled to be a Participant in the Plan as of the Effective Date or his date of hire by the Employer, whichever occurs later" (Doc 13-2).

Plaintiff argues that the BPT is not subject to ERISA because the BPTA explicitly disclaims that it is subject to ERISA. Article 20 of the BPTA states: "Nothing in this Agreement shall be construed to subject the Trust created hereunder to the Employee Retirement Income Security Act of 1974, as amended." However, the Tenth Circuit Court of Appeals has stated that "[i]f a plan meets the five criteria outlined in *Donovan* it is governed by ERISA, whether or not the parties wish to be subject to ERISA." *Peckham*, 964 F.2d at 1049 fn.11.

7

Plaintiff–relying on *Fort Halifax Packing Company,* 482 U.S. 1 (1987) and *Lettes v. Kinam Gold, Inc.*, 3 Fed.Appx. 783 (10th Cir. 2001)(unpublished)–argues that the ECIC does not meet the criteria for consideration as an ERISA plan because it makes payments for a one-time event, based on a preexisting mathematical formula, requiring a single payment, with no administrative scheme or discretionary decisions regarding the operation of the plan. Plaintiff specifically argues that *Fort Halifax Packing Company* requires that an employee welfare benefit plan include "an ongoing administrative program." However, this argument misconstrues the holding in *Fort Halifax Packing Company* and ignores important differences in this case.

*Fort Halifax Packing Company* involved a Maine statute requiring employers to provide a one-time severance payment to employees in the event of a plant closing. The Supreme Court held that the Maine statute was not preempted by ERISA because the statute neither established, nor required, an employer to maintain an employee welfare benefit plan. *Fort Halifax Packing Company*, 482 U.S. at 6. The Supreme Court concluded that the one-time severance payment constituted no more than a contingent duty that "requires no administrative scheme whatsoever to meet the employer's obligation." *Id.* at 12.

Unlike Maine's statutory requirement that employers provide severance payments at the one-time closure of a plant, which did not require companies to create a written plan or set aside funds to comply with the statutory requirement, the ECIC expressly created a fund and an administrative scheme which allowed employees to apply for severance benefits at any time within two years after a change in control had occurred, including case by case adjudication of an employee's claim (Doc. 13-2 13-6). The fact that the Trustee, Wachovia, rejected Plaintiff's application for severance benefits, submitted approximately 18 months after the merger,

8

highlights the existence of a longstanding administrative scheme with more than a modicum of discretion regarding the payment of claims.  Furthermore, a change in control, unlike a plant closure, is not necessarily a one time event.  In this respect, it is significant that the ECIC binds any successor and limits a successor's ability to amend or modify the terms of the ECIC (Doc. 13-2).

The unique facts and circumstances in the *Lettes* case make it inapplicable to this suit. Mr. Lettes, a key employee at AMAX Gold, Inc. (hereinafter "AGI") brought suit against his former employer after being denied his payment under a golden parachute agreement. In 1997, in anticipation of a pending merger with Kinross Gold Corporation (hereinafter "Kinross"), AGI adopted a "Separation Plan for Key Employees" that provided an additional, one-time golden parachute payment apart from the company's general severance plan.  The golden parachute agreement was unfunded.  The additional payment became due upon a key employee's separation from service after a change in control.  The plan automatically terminated at the close of business on December 31, 1999.  Only nine key employees were eligible to participate in the plan. Upon merger with Kinross, golden parachute benefits were automatically paid to seven key employees without separate requests to, or action of, the benefit committee.  Mr. Lettes brought suit after being denied benefits because he had been offered and refused a position at Kinross that AGI and Kinross believed to be comparable employment.  The Tenth Circuit Court of Appeals held that the Separation Plan for Key Employees in *Lettes* did not constitute an employee welfare benefit plan because it did not create an ongoing administrative program to meet the employer's obligations. *Lettes*, 3 Fed.Appx. at 786.

Unlike the golden parachute agreement in *Lettes*, the ECIC involved all employees of BRI and its subsidiaries (Doc. 13-2).  Under the ECIC, $75,000,000 was set aside in the BPT,

which was administered by the Trustee, Wachovia (Doc. 13-4). The ECIC covered severance pay, the continuation of benefits, and outplacement services (Doc. 13-2). The ECIC created an administrative scheme which allowed employees to apply for severance benefits at any time within two years after a change in control had occurred, including case by case adjudication of an employee's claim (Doc. 13-2 13-6). The ECIC provided severance benefits on terms that allowed discretion in assessing "cause" for terminations, "good reason" for resignations, as well as the scope and extent of career services (Doc. 13-2, 13-4, 13-6). Furthermore, the ECIC created an administrative scheme that outlasted a change in control (Doc. 13-2). Thus, *Lettes* is distinguishable and does not control.

Common law causes of action are preempted by ERISA if the factual basis for the causes of action relate to an employee benefit plan. *See* 29 U.S.C. § 1144(a) (stating that ERISA "shall supercede any and all state laws insofar as they may now or hereafter relate to any employment plan). The phrase "relate to" is given a broad, commonsense meaning, such that a state law relates to a benefit plan "if it has a connection with or reference to such a plan." *Pilot Life Insurance Company v. Dedeaux*, 481 U.S. 41, 47 (1987). Plaintiff's common law causes of action for breach of contract and breach of fiduciary duties are based on alleged improper processing of a claim for severance benefits under the ECIC, an employee benefit plan, pursuant to ERISA. These claims undoubtedly meet the criteria for preemption under 29 U.S.C. § 1144(a). Plaintiff's claims for "punitive damages, pre-judgment/post-judgment interest, and such other and further relief" are also preempted to the extent that they relate to Plaintiff's claims for breach of contract and breach of fiduciary duties; however, these extra-contractual claims are not preempted as to Plaintiff's claim of promissory estoppel (Doc. 2).

Plaintiff's promissory estoppel claim relates to an unpaid bonus allegedly promised to the

Plaintiff if she successfully completed the closing of a $50,000,000 acquisition for Defendants BRI, Cello, and COP. This cause of action for promissory estoppel, including Plaintiff's claim to "attorney fees and costs, punitive damages, pre-judgment/post-judgment interest, and such other and further relief," is not preempted by ERISA.

This Court, however, now lacks jurisdiction over Plaintiff's remaining promissory estoppel claim. Jurisdiction in this case is founded upon diversity. 28 U.S.C. § 1332. Although the parties remain diverse, the amount-in-controversy requirement of diversity jurisdiction is not satisfied in the absence of Plaintiff's preempted claims for breach of contract and breach of fiduciary duties. Indeed, Plaintiff's claim for promissory estoppel only alleges "lost additional compensation in the form of a bonus for her successful completion of the closing of the acquisition, in an amount to be determined at trial" (Doc. 2). Plaintiff's promissory estoppel claim, therefore, must be dismissed without prejudice for lack of jurisdiction.

**IV.     Conclusion.**

The Court finds Plaintiff's causes of action for breach of contract and breach of fiduciary duties, Counts I and II, including all extra-contractual claims relating to these claims, are preempted by ERISA. Therefore, Plaintiff failed to state a claim upon which relief can be granted. Because this Court lacks jurisdiction over Plaintiff's remaining promissory estoppel claim, Count III, this claim is dismissed without prejudice.

**WHEREFORE,**

**IT IS ORDERED** that Defendants BRI, Cello, and COP's motion to dismiss in part, pursuant to Rule 12(b)(6), joined by Defendant Wachovia is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's state law promissory estoppel claim is **DISMISSED WITHOUT PREJUDICE**.

_____
**ROBERT C. BRACK
UNITED STATES DISTRICT JUDGE**